**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4413-16T2
          A-4415-16T2

M.A.,

    Plaintiff-Respondent,

v.

G.A.,

    Defendant-Appellant.

_____

M.A.,

    Plaintiff-Respondent,

v.

H.A.,

    Defendant-Appellant.

_____

Argued June 26, 2018 — Decided July 31, 2018

Before Judges Simonelli and Koblitz.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Middlesex
County, Docket Nos. FV-12-1667-17 and FV-12-
1668-17.

Michael B. Roberts argued the cause for appellants (Roberts & Teeter LLC, attorneys; Michael B. Roberts, on the briefs).

M.A., respondent, argued the cause pro se (Steven R. Enis, on the brief).

PER CURIAM

In this consolidated appeal, two defendant brothers, G.A. and H.A., appeal from the May 12, 2017 final restraining orders (FROs) entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Their older brother, M.A., is the plaintiff in both matters. Defendants argue that it was plain error to hold a joint trial, it was plain error for the court to question the witnesses so extensively, plaintiff produced insufficient evidence of terroristic threats, and the court rendered insufficient judicial findings in the case of G.A. We disagree and affirm.

## I.

The trial judge found the following facts. Plaintiff brought his two younger brothers to the United States from Egypt. G.A. lived with plaintiff from 1999 to 2010. H.A. lived with him from 2010 until 2014. At the time of the underlying domestic violence, the two younger brothers were living together at plaintiff's condominium. G.A. asked plaintiff for a loan of $150,000 for his wedding, and became angry when plaintiff refused. After plaintiff refused, G.A. and H.A. returned to Egypt for G.A.'s wedding.

Plaintiff changed the locks on the condominium while his brothers were overseas. Upon his return, G.A. sought relief through a landlord-tenant order to show cause. After he was ordered to do so, plaintiff gave G.A. a copy of the new keys, and took photographs of the condition of the apartment, showing it to be "in a very neat, clean and orderly state." On October 7, 2016, G.A. lost his landlord-tenant case. On that date, both G.A. and H.A. approached plaintiff in the court hallway and began to "berate and threaten" plaintiff and his wife. Later that day, plaintiff received threatening phone calls from the two brothers. Defendants were removed from the apartment on November 19, although H.A. had filed his own unsuccessful landlord-tenant order to show cause seeking to remain three days earlier. The judge found plaintiff and his wife to be credible and defendants not to be credible.

On November 19, before leaving the apartment, defendants "trashed" the apartment, as evidenced by police photographs admitted into evidence. Tiles and furniture were broken and garbage strewn about. A wall was "smashed." The judge found by a preponderance of the evidence that both defendants had committed terroristic threats, N.J.S.A. 2C:12-3, and criminal mischief, N.J.S.A. 2C:17-3, and that plaintiff needed an FRO for his protection, given the ongoing litigation in Egypt and defendants' continuing animosity towards plaintiff.

A-4413-16T2

The standard of review that governs our consideration of this appeal is well established. "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference to the trial court's factual findings "is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). "[T]he trial court . . . has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). "Therefore, an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (alteration in original) (quoting Rova Farms, 65 N.J. at 484). Furthermore, "[b]ecause of the family courts' special

jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

The PDVA was enacted in furtherance of New Jersey's "strong public policy against domestic violence." Id. at 400. Under the PDVA, an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed." N.J.S.A. 2C:25-29(a); see also R. 5:7A(d).

Domestic violence occurs when a defendant commits one or more of the enumerated acts upon a person covered by the act, such as, terroristic threats, N.J.S.A. 2C:12-3, or criminal mischief, N.J.S.A. 2C:17-3. A defendant commits terroristic threats if he or she threatens to commit any crime of violence "with the purpose to terrorize another" or "threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out." N.J.S.A. 2C:12-3. Criminal mischief occurs when a person "[p]urposely or knowingly damages tangible property of another." N.J.S.A. 2C:17-3(a)(1).

If a predicate offense is proven by a preponderance of the evidence, N.J.S.A. 2C:25-29(a), the judge must then assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to

protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver v. Silver, 387 N.J. Super. 112, 127 (App. Div. 2006)).

## III.

Defendants claim that it was plain error for them to be tried together and plain error for the judge to question the witnesses. To justify relief, plain error must be "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Macon, 57 N.J. 325, 336 (1971).

Defendants point out that G.A. was not alleged to have committed criminal mischief and by trying defendants together the judge became confused as to what proofs were admitted against which defendant. Neither defendant, who were represented by separate counsel, objected to the joint trial. They submitted a joint appellate brief after successfully seeking consolidation on appeal.

Defendants also claim the judge committed plain error by questioning the witnesses as extensively as he did. Defendants concede that judicial questioning is permitted. N.J.R.E. 614. Defense counsel did not object to the judge's questions. It is incumbent upon counsel to object to judicial intervention when warranted. An objection alerts the judge to dissatisfaction with the way the trial is being conducted, and gives the judge the

opportunity to change course. To wait until the party loses and then raise the issue is not a convincing strategy, especially where we are not concerned with prejudice to a jury in a bench trial. See State v O'Brien, 200 N.J. 520, 534-35 (2009) (cautioning judges against undue intervention in a criminal trial for fear the jury will believe the judge favors one party).

Defendants also argue that the record does not support the findings of domestic violence, because the threats expressed only fleeting anger. Plaintiff testified that G.A. said he would kidnap his diabetic daughter and give her an overdose of insulin. The specific nature of the threat to kill a defenseless child was frightening. The hallway threats were followed by threatening phone calls, and informed by the extensive damage done to plaintiff's condominium. The fact that the threats were issued in a courthouse does not make them any less serious.

G.A. also argues that because he was alleged to have committed harassment rather than criminal mischief, the judge issued insufficient findings with regard to him. However, G.A. was the brother who made the most frightening threat aimed at plaintiff's daughter. G.A. was found to have committed terroristic threats, which was alleged in the complaint. Thus any error in finding G.A. had committed criminal mischief, although he was not charged with that violation, was harmless. The judge had the opportunity

to assess the individuals and determined that the danger to plaintiff from his brothers was real. He found "they're both angry and have been angry for a long time." We will not second-guess the judge's first-hand evaluation of the situation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4413-16T2